# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 5D2024-0202
LT Case No. 2021-CA-436

———————————————

NANCY JACKSON,

    Appellant,

    v.

FLORIDA DEPARTMENT OF
TRANSPORTATION and
FERROVIAL INFRASTRUCTURE,
INC.,

    Appellees.

———————————————

On appeal from the Circuit Court for Duval County.
Robert M. Dees, Judge.

Brian J. Lee, of Morgan & Morgan, Jacksonville, for Appellant.

Hinda Klein, of Conroy Simberg, Hollywood, for Appellees.

October 10, 2025

SOUD, J.

Appellant Nancy Jackson filed a negligence action against Appellees Florida Department of Transportation and Ferrovial Infrastructure, Inc. alleging she was injured after she tripped and fell on a public sidewalk. The trial court entered summary final judgment in favor of both defendants because it concluded that the less-than-one-inch vertical misalignment at an expansion joint in

the concrete sidewalk was "open, obvious, and ordinary" and "[was] not an inherently dangerous condition such that it would establish a duty of care to maintain it." From this summary final judgment, Jackson appeals. We have jurisdiction. *See* Art. V, § 4(b)(1), Fla. Const.; Fla. R. App. P. 9.030(b)(1)(A). We affirm.

## I.

After Jackson purchased beer and cigarettes at a Speedway gas station on Lane Avenue in Jacksonville, Florida—a location a block from her residence that she visited almost daily—she was walking home on a sidewalk with her leashed chiweenie dog and carrying her purchased items. This sidewalk was on public right-of-way and unconnected to any structure. "The next thing [she] knew, [she] was going down to the ground" suddenly and without warning.

Jackson filed suit against the Department and Ferrovial, which contracted with the Department to inspect and maintain the sidewalk where Jackson fell. When deposed, Jackson testified that she tripped on an expansion joint of the sidewalk where one section of concrete was approximately ¾ of an inch higher than the adjacent section. The location of her fall was captured in the photograph she marked during her deposition:



More than two-and-a-half years after the fall, Jackson's retained engineering expert inspected the sidewalk. He opined that the uneven sidewalk constituted a tripping hazard because the vertical misalignment at the expansion joint was greater than ½ inch. In forming his opinions, the expert relied on numerous

standards and regulations, including, *inter alia*, the Florida Building Code.

Pertinent here, the expert acknowledged that the standards he cited were not written to apply to outdoor public sidewalks. Nonetheless, he believed these standards, including the Florida Building Code, could be broadly interpreted to cover public sidewalks that are unattached to a structure because such sidewalks lead to buildings and are part of the access route. The expert was unable to cite any authority for his interpretation. He also acknowledged his opinion was inconsistent with the FDOT Maintenance Rating Program Handbook, which prohibits single vertical misalignments greater than 1½ inches in concrete sidewalks. The Department's corporate representative testified that the MRP Handbook does not incorporate the Building Code "because [the Department does not] build buildings, we build roads."

Ferrovial moved for summary judgment, which was joined by the Department. Following a hearing, the trial court granted the motion and entered summary final judgment for both defendants. The judge concluded that summary judgment was appropriate because the sidewalk's "minor" vertical misalignment was "so open, obvious and ordinary so as to be innocuous as a matter of law. As such, the uneven sidewalk [was] not an inherently dangerous condition such that it would establish a duty of care to maintain it." In reaching his decision, the trial court rejected the engineering expert's opinion that the Florida Building Code applied to this case.

This appeal followed.

## II.

We review the trial court's decision to enter summary final judgment de novo. *See CAM Bradford Homes, LLC v. Arrants*, 415 So. 3d 266, 267 (Fla. 5th DCA 2025), *reh'g denied*, (July 23, 2025).

To be entitled to summary judgment, Ferrovial and the Department must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a). "[A] genuine dispute occurs when the evidence would allow a reasonable jury to return a verdict for

3

[the non-moving] party." *Duran v. Crab Shack Acq., FL, LLC*, 384 So. 3d 821, 824 (Fla. 5th DCA 2024) (alteration in original) (quoting *Welch v. CHLN, Inc.*, 357 So. 3d 1277, 1278 (Fla. 5th DCA 2023)). This standard "closely mirrors the standard for directed verdict, in which the focus of the analysis is whether the evidence presents a sufficient disagreement to require submission to a jury." *Carpio v. W. Beef of Fla., LLC*, 384 So. 3d 192, 193 (Fla. 4th DCA 2024) (internal quotations omitted). When considering a motion for summary judgment, a trial court—and this Court—must view the evidence in a light most favorable to the non-moving party. *See Welch*, 357 So. 3d at 1278.

## A.

In Florida, a landowner owes an invitee two distinct duties. *See Dampier v. Morgan Tire & Auto, LLC*, 82 So. 3d 204, 206 (Fla. 5th DCA 2012); *see also Kelley v. Sun Cmtys., Inc.*, No. 8:19-cv-1409-T-02AAS, 2021 WL 37595, at *2 (M.D. Fla. Jan. 5, 2021). First, the landowner must use reasonable care to maintain the property in a reasonably safe condition. *See Dampier*, 82 So. 3d at 206. Further, a landowner must warn an invitee of latent dangers that are or should have been known to the owner and are unknown by the invitee or cannot be discovered by him through ordinary care. *See id.* "These duties are independent of one another, and the breach of either duty will subject the landowner to liability." *Kelley*, 2021 WL 37595, at *2.

"A landowner's duty to warn of dangers is discharged when a potential danger is open and obvious." *Tanner v. Garden Cmtys., LLC*, No. 8:23-cv-2019-WFJ-TGW, 2024 WL 3920692, at *2 (M.D. Fla. Aug. 22, 2024). While an open and obvious condition discharges the owner's duty to warn, it will not serve to relieve him of the duty to maintain the premises in a reasonably safe condition. *See id.* Nonetheless, obvious conditions will not constitute a breach of duty to maintain the property when: "(1) those conditions . . . are open and obvious and not inherently dangerous; or (2) those conditions that may be dangerous . . . are so open and obvious that an invitee may be reasonably expected to discover them to protect himself." *Id.* (internal quotation marks omitted) (quoting *Kelley*, 2021 WL 37595, at *2).

4

We affirm the trial court's conclusion that the minor vertical misalignment at the expansion joint of the sidewalk where Jackson fell is "so open, obvious, and ordinary" that it does not constitute a dangerous condition as a matter of law. "Some conditions are simply so open and obvious, so common and so ordinarily innocuous, that they can be held as a matter of law to not constitute" a dangerous condition. *Circle K Convenience Stores, Inc. v. Ferguson*, 556 So. 2d 1207, 1208 (Fla. 5th DCA 1990); *see also Kelley*, 2021 WL 37595, at *3. The less-than-one-inch vertical misalignment in the sidewalk here is simply commonplace and is of such a slight and inoffensive nature that it does not present a dangerous condition to pedestrians walking thereon. *See Tanner,* 2024 WL 3920692, at *3 ("Likewise here, the unlevel sidewalk joint at the Compton Place Apartments was not a dangerous condition."). As such, neither the Department's nor Ferrovial's legal duty to warn or maintain the sidewalk was breached in this instance.

B.

Further, in arriving at the conclusion that the misalignment here was so ordinary and innocuous that it was not a dangerous condition as a matter of law, the trial court correctly determined that the Florida Building Code is inapplicable to the public sidewalk on which Jackson fell.

In support of his opinions that the Department and Ferrovial were negligent in causing Jackson's fall, the engineering expert opined that the ¾-inch vertical misalignment in the sidewalk exceeded that allowed by the Florida Building Code. However, he also acknowledged the building code "appl[ies] to the construction, alteration, relocation, enlargement, replacement, repair, equipment use and occupancy of every building or structure or any appurtenances connected or attached to such buildings or structures." Notwithstanding the express scope of the building code, in the expert's view, "people have to be able to get into buildings, so that's where the building code comes in. You have to be able to give people the ability to get in and out of a structure, and that's where sidewalks come in."

Whether the Florida Building Code is applicable to this case ultimately is a question of law belonging to the court, not the

5

witness. *See Lindsey v. Bill Arflin Bonding Ag., Inc.*, 645 So. 2d 565, 568 (Fla. 1st DCA 1994) ("The legal effect of a building code presents a question of law for the court, not a question of fact for the jury."); *see also Edward J. Seibert, A.I.A. Architect & Planner, P.A. v. Bayport Beach & Tennis Club Ass'n, Inc.*, 573 So. 2d 889, 891–92 (Fla. 2d DCA 1990) ("An expert should not be allowed to testify concerning questions of law and the interpretation of the building code presented a question of law. It was the duty of the trial court to interpret the meaning of the code . . . ." (citations omitted)). As such, it was the responsibility of the trial court to determine whether the building code applies to the sidewalk in this case and whether the code provided evidence of negligence. *See Martin v. Omni Hotels Mgmt. Corp.*, No. 6:15-cv-1364-ORL-41KRS, 2017 WL 2928154, at *4 (M.D. Fla. April 19, 2017) ("Accordingly, [the expert] may not testify as to the applicability or inapplicability of any provision of the Florida Building Code. This Court will determine what provisions, if any, are applicable to the facts of this case.").

Here, the trial court was correct to reject the expert's opinion and conclude the building code was not applicable to this case. The express scope of the code prohibits its application to the right-of-way sidewalk where Jackson fell. Further, the expert was unable to provide any support for his novel interpretation applying the building code to a public sidewalk unconnected to any building or structure. His view would have the effect of extending the Florida Building Code to cover the thousands of miles of public right-of-way sidewalk across the state of Florida. Such a strained approach paves a path far too wide and stretches the building code far too long.

## III.

Accordingly, because the trial court properly concluded that the Florida Building Code was inapplicable to this case and that the minor misalignment in the concrete was so open, obvious, and ordinary that it did not constitute a dangerous condition, the final summary judgment in favor of the Department and Ferrovial is AFFIRMED.

It is so ordered.

JAY, C.J., and MACIVER, J., concur.

6

---

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

---